**FILED**

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

SEP 0 8 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

JANICE E. COBB-HENNIX                          :
3104 Ramsgate Place                            :
Fort Washington, Maryland 20744                :
                                               :
   Plaintiff                     :
                                               :
   v.                            :

Nathaniel Fields, President          CASE NUMBER 1:06CV01572
African Development Foundation
1400 I Street, N.W.                  JUDGE: Paul L. Friedman
Washington, D.C. 20005
                                     DECK TYPE: Employment Discrimination

   and                   DATE STAMP: 09/08/2006

African Development Foundation                 :
1400 I Street, N.W.                            :
Washington, D.C. 20005                         :
                                               :
                                               :
   Defendants                   :

---

## COMPLAINT OF DISCRIMINATION BASED ON PHYSICAL DISABILITY

     Plaintiff Janice E. Cobb-Hennix complains of the above-identified defendants as

follows:

### JURISDICTION AND VENUE

     1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

Venue is proper pursuant to Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C. § 2000e et seq.; and the Rehabilitation Act of 1973, as amended, 29 U.S.C.

§§ 791, 794(c). This action was commenced within ninety (90) days following Plaintiff's

receipt of the June 7, 2006 final decision of the United States Equal Employment

Opportunity Commission (EEOC) denying her request for reconsideration. *See* Plaintiff's Exhibit # 1. **For timeliness purposes, the Commission will presume that this decision was received five (5) calendar days after it was mailed.**

## THE PARTIES

2. Upon information and belief, Defendant Nathaniel Fields was President of the African Development Foundation at all times relevant to this action.

3. Defendant African Development Foundation (hereinafter referred to as "Defendant Agency" of "the Agency") is an agency of the government of the United States and is located at 1400 I Street, N.W., Washington, D.C. 20005.

4. Plaintiff Janice E. Cobb-Hennix (hereinafter referred to as "Plaintiff") resides at 3104 Ramsgate Place, Fort Washington, Maryland 20744.

5. Plaintiff is an employee of Defendant African Development Foundation and currently occupies the position of GS-7 Administrative Operations Assistant. Her duty station is located at 1400 I Street, N.W., Washington, D.C. 20005.

## THE FACTS

6. Plaintiff began her employment with the Federal Government in 1967, and except for some minor breaks in service, has been employed with the Defendant Agency continuously since 1991.

7. In 1994 Complainant was diagnosed with Systemic Lupus Erythematosus, a potentially life-threatening autoimmune disease, but treatable and began receiving medications to treat her condition.

8. One of the medications Plaintiff was taking to treat her Lupus condition, i.e., Cyclophosphamide (also known as Cytoxan) had potentially dangerous side effects

unless she drank large quantities of water and took frequent restroom breaks to empty excess medication from her bladder.

9. From September 1994 to April 1995, Plaintiff was absent from work approximately six months on temporary total disability resulting from her Lupus condition.

10. When Plaintiff was diagnosed with Lupus in 1994 and returned to work she occupied the position of GS-7 Procurement Assistant (Typing), she was able to take frequent restroom breaks that her condition demanded without any accommodation.

11. In October 1994, Plaintiff requested approval from Gregory Smith, then President of Defendant Agency, to participate in the Leave Donor Program and informed him that she was suffering from Lupus. She followed up her request in writing and it was approved.

12. In April 1995, Plaintiff returned to work and informed her supervisor, Tom Wilson, in person, that she was suffering from Lupus. She explained its effects and that her physician recommended that she be placed on a part-time schedule of four hours per day for approximately four to six months, with gradual increase to full-time if her condition sufficiently improved. The request for accommodation for a flexible schedule, i.e., part-time schedule was approved.

13. In April 1995, Plaintiff also informed the other Agency officials of her Lupus condition: Constance Smith, the Agency's Personnel Director; Peggy Snowden, the Agency's Personnel Assistant; and Janis McCollim, Executive Assistant to William Ford, who was then President of Defendant Agency.

3

14. Thomas Wilson was Plaintiff's supervisor continuously for about eight years before and during the period when she was diagnosed with Lupus and when she requested reasonable accommodation for restroom breaks.

15. In December 1995, Defendant Agency underwent a reduction in force in which the Plaintiff was reassigned to a GS-6 Office Assistant position that required her to perform the duties of the Receptionist and the Agency's Travel Coordinator. The duties of the Receptionist caused the Plaintiff to remain at the front desk for extended periods; thereby rendering her unable to take the frequent restroom breaks that her condition demanded.

16. In February 1996, when the Plaintiff began her receptionist duties, the Agency changed the procedure for the receptionist to obtain relief from the front desk for breaks. When Plaintiff needed a restroom break, she was ordered to first attempt to find someone to relieve her at the front desk, and if she was unable to find a co-worker to relieve her, to switch the telephones to night service, unlock the bolt at the bottom of the double doors to the reception area, close and lock the double doors, and then proceed to the restroom. This new procedure delayed Plaintiff from getting to go to the restroom when she needed to do so.

Prior to Plaintiff assuming the Receptionist duties, the former receptionist had no restrictions for restroom breaks and smoke breaks, and obtaining someone to relieve her. She needed to call only one designated person, i.e., the Plaintiff, who was ordered to cease whatever work she was doing and relieve the Receptionist anytime she requested relief.

4

17. In October 1996, Plaintiff began to have problems with her bladder that resulted in a surgery on December 17, 1996 and was diagnosed with Interstitial Cystitis caused by an accumulation of Cytoxan in her bladder.

18. In a January 28, 1997 memorandum, Plaintiff supplemented her earlier requests for accommodation for needed restroom breaks with a formal written request to her supervisor, Thomas Wilson, explaining in details her bladder condition, the problems she was experiencing from being unable to go to the restroom when she needed to do so and how her condition could worsen if this problem continued. *See* Plaintiff's Exhibit # 2.

19. The Plaintiff's memorandum of January 28, 1997 was accompanied with an explanatory letter of January 11, 1997, from her Urologist, Doctor Frederick B. Hendricks, identifying that the Plaintiff had a bladder condition that causes unavoidable urges to urinate quite frequently and that her urges could not be ignored without an accident happening and hoped the Agency would take the problem under consideration. No response from the Agency to the Plaintiff memorandum and Plaintiff's Urologist letters. *See* Plaintiff's Exhibit # 3.

20. In a January 31, 1997 meeting, Plaintiff informed Mr. Wilson that the procedure which she was required to follow before going to the restroom were too lengthy, ineffective and did not constitute reasonable accommodation because her need to use of the restroom was immediate. Plaintiff suggested to him that she leave the doors opened so she could get to the restroom quicker, but Mr. Wilson informed her that she should continued to close the doors until he could come up with a resolution for restroom

5

relief for her.  Plaintiff did not receive any resolution or any further discussion on the issue.

21.  In March 1997, Plaintiff underwent a second surgical operation on her bladder that revealed a pre-cancerous condition and permanent bladder damage.

22.  On April 4, 1997, Plaintiff met with William Ford, the Agency's President and Nathaniel Field, the Agency's Vice President, to discuss restroom accommodation for her condition.  She explained to them the effects of Lupus upon her, her treatment for it, and her need to consume large quantities of water and to urinate frequently.  In this meeting they did not engage in the interactive process on the ineffective relief she was receiving for restroom breaks.  They asked no questions and offered no comments, causing Plaintiff to leave the meeting in tears.

23.  On June 19, 1997, Plaintiff filed an informal EEO complaint of disability discrimination based on Lupus, contending that the Agency denied her reasonable accommodation by failing to allow her frequent restroom breaks that her condition demanded and, that as a result, she suffered permanent bladder damage for which she was forced to undergo two surgeries.

24.  In June 1997, Plaintiff presented her supervisor with a document from her Rheumatologist, Doctor Griffin that explained in more details the issues about providing the Plaintiff with a proper work environment that would not further complicate her disability as he requested.  No information requested from Plaintiff or Rheumatologist. *See* Plaintiff's Exhibit # 4.

25.  In June 1997, Defendants knew that Plaintiff had a serious medical condition when they approved advance sick leave for over forty chemotherapy treatments for her

bladder and for other related medical care. Plaintiff's supervisor, Tom Wilson acknowledged that the damage to Plaintiff's bladder occurred on the job when he certified that fact on a Workers' Compensation form. *See* Plaintiff's Exhibit # 5.

26. On July 14, 1997, Jennifer Parker, a co-worker and assigned as a relief person for Plaintiff, stated in a sworn statement that Plaintiff received only two breaks each day and that it was difficult for Plaintiff to be relieved during the proper time that she needed to use the restroom because employees were not at their desk or were working on projects they wanted to complete. *See* Plaintiff's Exhibit # 6.

27. On July 27, 2004, Janis McCollim, who was then Executive Assistant to Defendant Nathaniel Fields, and who was assigned as a relief person for Plaintiff, in her sworn statement stated she knew the Plaintiff had Lupus and a bladder problem. She stated she was the closest person to the front desk, Plaintiff received only two breaks each day, and she received calls of panic from the Plaintiff in her need to go to the bathroom. Also, in her statement she further stated that to the best of her recollection that the Plaintiff was not allowed to go to the restroom freely until the fall of 1997 when the President, William Ford, finally stated that it was okay for her to do so. *See* Plaintiff's Exhibit # 7.

28. On July 29, 1997, Plaintiff's co-worker, Joyce Britton, stated in a sworn statement that she heard Plaintiff's second-line supervisor, Genevieve Peterson, stressed that the front desk was never to be left unattended at any time, under any circumstances. In her statement, she further stated that she had observed Plaintiff address her concerns for restroom breaks to every level of management, from the Administrative Officer,

Genevieve Peterson, to the then President of the Agency, William Ford. *See* Plaintiff's Exhibit # 8.

29. The Plaintiff's Rheumatologist, Doctor Calvin Griffin, sent a letter of December 3, 1997, to the Vice President, Nathaniel Fields, detailing the Plaintiff medical condition and requesting that she be allowed to work from home. The Agency did not respond to this request for accommodation. *See* Plaintiff's Exhibit #9.

30. The actions taken by the Agency over a year in response to Plaintiff's request for reasonable accommodation, did not address the accommodation that Plaintiff specifically requested and needed, i.e., to go to the restroom without undue delay as necessary.

31. In March 1998, nine months after filing an EEO complaint and one year after the Plaintiff's bladder had been was permanently damaged, the Agency finally responded to the Plaintiff EEO Complaint by removing the receptionist duties which was one of her major demands in her EEO Complaint. The Plaintiff was reassigned to a new position that allowed her to use the restroom when she needed to do so without any restrictions. The Agency refused to grant the Plaintiff compensation she requested for her damaged bladder.

32. Plaintiff could perform the essential functions of the Receptionist position with the accommodation of being allowed to go to the restroom without undue delay when she needed to do so.

33. Defendants' delay in providing Plaintiff with adequate accommodation caused her to sustain physical permanent injury, i.e., severe cystitis of the bladder.

8

34. On February 28, 2001, an EEO Counselor's Report was prepared on Plaintiff's allegations of discrimination, and her formal complaint was forwarded to EEOC's Washington, D.C. Field Office. One of the remedies sought by Plaintiff, reasonable accommodation for restroom breaks, was accepted after her health was damaged. Plaintiff requested compensation for her damaged health, but the Agency denied it. Plaintiff's formal complaint was forwarded to EEOC's Washington, D.C. Field Office for adjudication.

35. On June 16, 2003, the Agency filed "Agency's Motion for Decision Without a Hearing" with the EEOC's Washington, D.C. Field Office. The procedures the Agency imposed on Plaintiff to relieve her to go the restroom were ineffective. The Agency admitted that it took about one year to reassign Plaintiff to a new position as a response to her request for reasonable accommodation for the restroom breaks. Agency's Motion for Decision Without a Hearing at 6 E. *See* Plaintiff's Exhibit # 10.

36. The Agency recommended that EEOC grant partial summary judgment for Plaintiff's damage claims if it survived summary judgment because the Agency knew that it did not make a good faith effort to accommodate Plaintiff's request for reasonable accommodation for restroom breaks. The Agency's failure to provide reasonable accommodation for restroom breaks for the Plaintiff caused harm to her health. Agency's Motion for Decision Without a Hearing at 18. *See* Plaintiff's Exhibit # 10.

37. On March 26, 2004, an EEOC Administrative Judge issued a decision granting the Agency's Motion for a Decision Without Hearing and, on April 16, 2004, issued an Order entering judgment on the decision.

38. On May 6, 2004, the Agency took final action implementing the Administrative Judge's April 16, 2004 Order.

39. On August 2, 2004, Plaintiff appealed the Agency's May 6, 2004 final action to EEOC, alleging error by the Administrative Judge in granting the Agency's Motion for a Decision Without a hearing and reasserting her claim of disability discrimination and entitlement to reasonable accommodation. The Agency responded in opposition to the appeal.

40. On February 10, 2006, EEOC's Office of Federal Operations affirmed the Agency's final action.

41. On March 14, 2006, Plaintiff requested reconsideration of the February 10, 2006 appellate decision, and the Agency responded in opposition.

42. On June 7, 2006, the Office of Federal Operations denied Plaintiff's request for reconsideration. *See* Plaintiff's Exhibit 1.

<u>COUNT 1</u>

Plaintiff repeats and reasserts the allegations contained in paragraphs 1 to 42. above with the same effect as if more fully set forth herein.

By and through its conduct, Defendants violated Title VII of the Civil Rights Act of 1964, as amended and the Rehabilitation Act of 1973, as amended, by discriminating against Plaintiff based on her physical disability of Lupus.

WHEREFORE, Plaintiff demands a trial by jury and compensatory damages in the amount of $300,000 for physical injury, pain and suffering, mental anguish, emotional distress, back pay, front pay, leave usage, loss of enjoyment of life, out-of-

pocket medical expenses, attorney fees, costs, and such other relief as the Court deems

just and fair.

Date: _September 8, 2006_
Washington, D.C.

_Janice E. Cobb-Hennix_
Janice E. Cobb-Hennix, Pro Se
Plaintiff
3104 Ramsgate Place
Fort Washington, Maryland 20744
(301) 248-7284
(240) 441-1112 (Cell)
FAX (301) 248-7284

### JURY TRIAL

Plaintiff demands trial by jury of all issues herein.

_Janice E. Cobb-Hennix_
Janice E. Cobb-Hennix
Plaintiff

11