# *Statement*

on behalf of
Janice Cobbs-Hennix

---

On August 13, 1996, I was assigned to render temporary support at the African Development Foundation, 1400 Eye Street, NW, Washington, D.C., which ended January 15, 1997. My assignment was to provide data entry support (and other duties as assigned) to the Office of Budget and Finance, under the directorship of Tom Wilson. Janice Cobbs-Hennix was an employee in that division. On my new beginning at the Foundation, Mrs. Cobbs-Hennix was the first person to meet, greet and welcome me to the Foundation. At all times Mrs. Cobbs-Hennix's demeanor was pleasant, approachable, and she always offered her assistance for any questions or needs that I might have. On many occasions as I have walked past the front receptionist desk for access to kitchen, conference room and bathroom facilities, and also upon arrival and exit of the ADF office altogether, and always greeting her and asking how she was doing, or how she was feeling. As my assigned continued, I always greeted and briefly conversed with Mrs. Cobbs-Hennix. I remember her small comments about her recent return from vacation and how therapeutic the time away was for her personal well-being.

Not knowing specifically what her well-being required, I noticed that she often appeared to not be feeling well, as it was most noticeable in her face, coloring, poise and movement at the desk. I was deeply concerned about her health and would ask her each time in passing, how she was feeling. Shortly afterwards, she shared her personal physical dilemma (although not in great detail) about the medications she was taking, the effects it (medicines) was taking on her, how her physical reaction appeared to the other employess, and certain "smark" remarks and implications made in reference to her demeanor (while under medication). She always stated the advice of her doctor (the "do's" and "must's) to avoid worsening her condition. She also shared her need for urgent relief from the front desk to attend to personal needs. Shortly afterwards, Mrs. Cobbs-Hennix informed me of the physical discomfort and the stress she was experiencing from the inability to relieve herself because of the inability to get someone to replace her at the front desk. I personally heard the administrative officer, Genieveve Peterson stress the fact that the front desk was never to be left unattended at no times under no circumstances. She further emphasized reference to the rotating coverage list. That should the person not be able to cover, out on leave, the next person should be contacted, or coverage would be worked out in any case. I personally have seen and heard Janice Cobbs-Hennix make time-consuming efforts to contact someone to relieve her. Many times she got relief, many times she waited and waited for delayed relief, and many more times no one came and she would ask me to cover (as I was working in the conference room directly across from her desk.)

In addition to covering receptionist duties, Mrs. Cobbs-Hennix performed highly responsible tasks, especially tasks involving figures that required a high degree of concentration and focus. The gallery type lighting was dark and inappropriate for visibility, combined with constant interruptions and traffic back-and-forth across her desk. After several times of offering to relieve Mrs. Cobbs-Hennix, I was informed by my immediate supervisor that the director advised that I was not to provide relief on the front desk, because I was not hired for that. I explained the occasions on which I extended my assistance. Assuming I was trusted to use good judgement in responding to the needs of one of my associates, I felt no wrong was done. On occasion, the administrative officer, Genevieve Peterson, would ask me to cover the front desk from time to time. It appeared to be there were double standards in regards to the front desk situation.

Best Temporaries, Inc. (the agency from which I am employed) encourages their employees to be flexible in support to a client and to offer assistance to the needs of the office, to always demonstrate top quality performance, efficiency, flexibility, and to be willing to lend a hand where needed, otherwise to display "super-temp" attributes to the customer). For which I rendered. I was greatly disturbed by my own observation of the working environment; the lack of attentiveness to an employee's situation: particularly, the insensitivity to this employee's needs most times; the inefficently run of the administrative area altogether; the 'display of indifference' on the part of the administrative officer; no effort to resolve or remedy her situation. More disturbing is witnessing Mrs. Cobbs-Hennix address her concerns to every level of management, from the admin officer to the president of the Foundaton. My offer to provide relief for her to go to the ladies room, or take a ten minutes break to get fresh air was the least anyone should have done.

*ACKNOWLEDGEMENT*

I certify that the statement(s) made in observation of the facts are true and accurate to my own knowledge

_____    7/29/97
Joyce A. Britton          Date

PLAINTIFF'S EXHIBIT #8