Janice Cobb-Hennix v. ADF

EEOC No. 100-A2-7581X

Exhibit G

## INFORMAL EEO COMPLAINT OF JANICE COBB-HENNIX

To:        EEO Counselor Clarence Turner

From:      Joseph D. Gebhardt

Re:        Informal EEO Complaint of Janice Cobb-Hennix

Date:      June 19, 1997

---

### Introduction

This document sets forth the discriminatory and retaliatory actions against Ms. Cobb-Hennix that form the bases of her EEO complaint. Her employer, the African Development Foundation, is referred to herein as "the Agency".

The bases for Ms. Cobb-Hennix's complaint are discrimination due to disability (Lupus), denial of reasonable accommodation, and retaliation.

The requested remedies are:

1.   Removal of receptionist duties from her job.

2.   Reassignment to a new supervisor.

3.   Flexible work schedule, based upon her medical need for accommodation.

4.   Authorization of residence as alternate workplace.

5.   Continuation of participation in volunteer leave program.

6.   Desk audit for current job, going back for at least one year.



7.   Back pay.

8.   Appropriate RIF rights and remedies.

9.   Development of a written Agency policy prohibiting discriminatory and retaliatory harassment.

10.  Compensatory damages (up to $300,000).

11.  Award of reasonable attorney fees.

**Statement of Issues Presented for Counseling**

12. Corrected Performance Evaluation. JcH

I.   The Agency's failure to reasonably accommodate Ms. Cobb-Hennix

Ms. Cobb-Hennix has been diagnosed with Lupus, a disabling connective tissue disease that requires a daily regimen of medication, low stress, and frequent bathroom breaks (due to the medication).

Ms. Cobb-Hennix was diagnosed in 1994 and informed her supervisor of her condition -- as well as the corresponding reasonable accommodation she required -- shortly thereafter[1]. Since 1995, Ms. Cobb-Hennix has requested reasonable accommodation in writing on several occasions.  Instead of accommodating her, the Agency subjected her to a reduction-in-force (RIF) and downgraded Ms. Cobb-Hennix to a stressful receptionist position that did not allow her to take necessary restroom breaks.  See also issue II., infra (discriminatory

_____

[1]Ms. Cobb's disability was obvious to everyone at the Agency because her Lupus manifested physical symptoms, e.g. pronounced swelling.

2

RIF). Although Ms. Cobb-Hennix had herself relieved the receptionist before she was demoted to the position, no one was assigned as a backup or alternate to relieve Ms. Cobb-Hennix when she became receptionist.

The Agency's failure to accommodate Ms. Cobb-Hennix has had devastating medical consequences for her; because she was not afforded necessary restroom breaks, Ms. Cobb-Hennix suffered bladder damage that required a surgical operation in December 1996. Following this operation, Ms. Cobb-Hennix's doctor reiterated her need for reasonable accommodation. The Agency again failed to make the reasonable accommodations required by law. Ms. Cobb-Hennix again suffered bladder damage, resulting in another surgical operation in March 1997. This time, a precancerous growth was found in her bladder.

Ms. Cobb-Hennix first requested EEO Counseling in January 1997[2], at which time the Agency's dangerous failure to accommodate her disability was ongoing and constituted a continuing violation.

## II. Discriminatory RIF

Ms. Cobb-Hennix was forced out of her GS-7 position as Procurement Assistant by being RIF'd while she was on sick

---

[2]The Agency does not have an EEO Counselor and Ms. Cobb-Hennix has not received counseling until today, despite her requests over the past several months.

3

leave due to her disability. Although Ms. Cobb-Hennix had requested reasonable accommodation, including containment of stress on the job and necessary restroom breaks, the discriminatory RIF resulted in Ms. Cobb-Hennix being downgraded to a GS-6 receptionist position which involved more stress and no opportunity for her to take necessary restroom breaks.

Even after she was RIF'd and accepted the downgrade, Ms. Cobb-Hennix continued to receive discriminatory treatment in the way that her job duties as receptionist were assigned. Ms. Cobb-Hennix was given additional assignments beyond those she understood would form her duties as receptionist. Some of these additional assignments involved work previously performed by GS-9 staff. Ms. Cobb-Hennix was promised a desk audit but she did not receive one.

III.    Harassment

Ms. Cobb-Hennix has been subject to harassment and verbal abuse from Ms. Genevieve Peterson (a GS-14 Administrative Services Officer). Ms. Peterson's actions, including yelling at Ms. Cobb-Hennix and humiliating her in front of other Agency staff, have created a hostile working environment for Ms. Cobb-Hennix. Ms. Cobb-Hennix was also falsely accused of having misplaced a confidential envelope. All of this

4

harassing behavior is a retaliatory backlash against Ms. Cobb-Hennix for having attempted to initiate EEO counseling.

IV. Discriminatory performance evaluation

Ms. Cobb-Hennix received an unfair and discriminatorily low performance evaluation from her supervisor (Tom Wilson) on February 7, 1997. The discriminatory evaluation came without warning; it included criticisms of her performance that had not been conveyed to her during the time period for which she was evaluated. Ms. Cobb-Hennix had been led to believe by her supervisor, Mr. Tom Wilson, that her performance was more than acceptable. The proposed evaluation contained unfair and factually inaccurate criticisms of Ms. Cobb-Hennix's work.

Respectfully submitted,

JANICE COBB-HENNIX

JOSEPH D. GEBHARDT
CHRISTOPHER P. EDELSON
1748 N Street N.W.
Washington, D.C. 20036
(202) 496-0400

June 19 , 1997

Attorneys for Complainant

5