Janice Cobb-Hennix v. ADF

EEOC No. 100-A2-7581X

Sworn Statement of Tom Wilson

I, Tom Wilson, state the following:

1.  I have been an employee of the African Development Foundation since August 1985. During the relevant time periods, I served as Complainant's first line supervisor. Currently, I am the Director of the Office of Grants Management and Management Information Services and Complainant's first line supervisor.

2.  I received a memorandum dated August 20, 1995 from Complainant requesting a temporary reprieve from her responsibilities associated with mail processing. I granted this request.

3.  The duties associated with processing mail required Complainant to walk approximately 10 feet from her workstation, sort the incoming mail into slots, and walk the outgoing mail to the first floor of the building (using an elevator) once a day.

4.  Also in August 1995, Complainant and I discussed the possibility of using her residence as an alternate flexible workplace. Ultimately, however, it was determined that this was not a feasible option given that her primary duties involved preparing documents and filing them in cabinets maintained at ADF, and working with people and documents all physically located at the Agency. At that time, ADF did not have e-mail capabilities. Complainant's job could not be accomplished from home.

5.  Prior to the reduction in force, ADF's staff was approximately 54 employees and 8 contractors. After the RIF, ADF's staff was reduced to approximately 31 employees.

6.  The receptionist's normal tour of duty is from 8:30 a.m. to 5:00 p.m.

7.  As part of our routine receptionist relief schedule, we designated individuals to sit at the front desk and answer phones as needed. In addition, the receptionist had one 15 minute break in the morning, a one hour lunch break, and one 15 minute break in the afternoon.

8.  As a receptionist, Complainant's primary responsibility was to answer phones and greet visitors. At that time, we did not have an automatic lock on the front door and no voice mail. In the event she needed to leave her post, for security purposes, she had to find a replacement to sit at her desk. Four staff members had been assigned the responsibility of relieving her when she requested.

9.  I never disciplined Complainant for using the restroom or for leaving her desk. Nor, to my knowledge, did anyone else.

1



10.   I never told Complainant that she could not leave her desk to use the restroom.

11.   After Complainant was reassigned to the receptionist position, I recall her complaining to me that those persons designated to relieve her were taking too long and that she had to frequently urinate. She did not, at that time, inform me that her needs were due to a disability or that delay in urinating could result in bladder damage.

12.   Prior to January 1997, Complainant did not inform me, or to my knowledge any other ADF official, that she suffered from a bladder condition.

13.   After receiving Complainant's January 28, 1997, letter, we advised her that she had the entire Foundation staff at her disposal to call when she needed to be relieved. This was in addition to the already named and designated relief persons that she could call and the President's authorization for her to use the restroom at her discretion provided that she lock the front door behind her. To my knowledge, at no time, either before or after the January 28 letter was Complainant ever prevented from using the bathroom.

14.   I became aware of Complainant's lupus sometime after she initiated contact with an EEO counselor in June 1997. Complainant did not inform me, or to my knowledge any other ADF official, of her condition prior to that time.

15.   On September 17, 1997, Complainant advised me that she could not handle travel voucher related functions and, at the same time, answer the phones. She requested that she be allowed to perform her travel voucher functions away from the receptionist desk. I offered to seek authorization for her to work compensatory time in the mornings before 8:30 a.m. I received the necessary authorization, and in a memorandum to Complainant dated on October 10, 1997, I detailed the procedures for requesting overtime. By October 15, 1997, Complainant advised me that she would not be working overtime since the procedures were "too involved."

16.   Currently, and since her reassignment, Complainant participates in flex-time, and we have advanced her sick leave, flexibly applied the sick leave policy, allow her to participate in the leave donor program, and authorized her to take rest breaks at her discretion.

Pursuant to 28 USC 1746, I declare under penalties of perjury that the foregoing statement is true to the best of my knowledge.

June 12, 2003

Tom Wilson

2